United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 5, 2003**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 03-10207
Summary Calendar

_____

In The Matter Of: PREMIER INTERVAL RESORTS, INC.

Debtor

_____

PREMIER INTERVAL RESORTS, INC.,

Appellant,

versus

REVANCHE, L.L.C., et al.,

Appellee.

_____

Appeal from the United States District Court
For the Northern District of Texas
(No. 3:02-CV-1772-G)

_____

Before JONES, BENAVIDES, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

_____

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

Appellant Premier Interval Resorts, Inc. ("Premier") appeals the district court's affirmance of the bankruptcy court's ruling that a certificate of deposit ("CD") was cash collateral, and that, as a result, Premier had an obligation to seek permission from the court or Appellee Revanche ("Revanche") to use the proceeds therefrom. Finding no error, we affirm.

## I. FACTS AND PROCEEDINGS

Premier, the debtor in the bankruptcy court, borrowed $42 million from Meralex, secured by a Deed of Trust on the property to be purchased with the $42 million, a casino named the Maxim.[1] In addition, Premier made two deposits at Bank West in the form of two CD's, one for $2.5 million and one for $350,000. These CD's served as collateral for a letter of credit issued to the Nevada Insurance Commission, which served to put Premier in compliance with Nevada's workers' compensation laws.[2]

Shortly after securing this funding, Premier filed for Chapter 11 bankruptcy. Prior to foreclosure, Meralex assigned all of its interest to a newly-created, wholly-owned subsidiary, Revanche. Revanche therefore proceeded to foreclose on the Maxim. At the foreclosure sale, Revanche acquired title to the Maxim for $10 million. Revanche then filed a proof of claim for the deficiency amount owed by Premier, approximately $32 million. Because after the sale of the Maxim there was no estate left to administer or reorganize, Premier sought to dismiss the bankruptcy. After Revanche responded to Premier's motion to dismiss the bankruptcy, it filed a Motion to

---

[1]Premier makes allegations regarding another $25 million supposedly pledged and then withdrawn by Howard Jenkins. Jenkins was allegedly connected with Meralex, and pledged the money in exchange for 50% of Premier's stock. The dealings between Premier and Jenkins, while highlighted in Premier's brief, are irrelevant for purposes of this appeal.

[2]Nevada law required Premier to be self-insured in order to legally operate a hotel and casino.

Prohibit Use of Cash Collateral and for Adequate Protection, claiming that the remains of the $2.5 million CD that was returned to Premier was cash collateral under the Deed of Trust. The bankruptcy court granted Revanche's motion, finding that the CD did qualify as cash collateral under the Deed of Trust. The district court affirmed the bankruptcy court's order and final judgment. Premier timely appealed. This Court has jurisdiction under 28 U.S.C. § 158(d) (2003).

## II.  STANDARD OF REVIEW

This Court reviews the bankruptcy court's findings of fact for clear error, and its conclusions of law *de novo*. *In re Williams*, 337 F.3d 504, 508 (5th Cir. 2003).

## III.  DISCUSSION

A.      A CD is a note under Nevada law.

The Deed of Trust stipulates that it will be governed by the laws of Nevada. Deed of Trust at § 7.6. Nevada's Uniform Commercial Code statutorily defines a "certificate of deposit" as "an instrument containing an acknowledgment by a bank that a sum of money has been received by the bank and *a promise* by the bank *to repay* the sum of money." NEV. REV. STAT. 104.3104 (2002) (emphasis added). In the same statutory section, a note is defined as a promise of payment. *Id.* Encompassing both the definition of a certificate of deposit and the definition of a note, 104.3104 defines negotiable instruments as

> an unconditional *promise* or order *to pay* a fixed amount of money, with or without interest or other charges described in the promise or order, if it (a) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (b) is payable on demand or at a definite time; and (c) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money . . ..

*Id.* (emphasis added). By definition then, a CD is a promise of payment; a promise of payment, in turn, is a note. Further, the Uniform Commercial Code Comment to § 104.3104 makes clear that,

3

while the former version of Nevada's Article 3 treated CD's as instruments separate from notes and drafts, the revised Article 3 treats CD's as *notes*. *Id.* The bankruptcy court, and consequently the district court, did not err in determining that the CD in question was a note under Nevada law.

B.      The CD "relat[es] to" the Maxim.

Neither party disputes that section 3.1 of the Deed of Trust expressly grants a security interest in certain items to Meralex, which Meralex transferred to Revanche. Specifically, Premier granted

> to [Revanche] (as Creditor and Secured Party) as security for the payment of the Note and all other sums secured by this Deed of Trust a security interest in all the following described property presently owned or hereinafter acquired wherever the same be situated *relating to or arising from the* [Maxim]: . . . any other tangible . . . property or rights or any other matters listed in any "*Financing Statement*" (all as hereinafter defined) of [Premier], all of which property, rights or other matters are hereby incorporated herein by this reference.

Deed of Trust at § 3.1 (first emphasis added). Premier claims that this language is ambiguous.

Under Nevada law, "[a] contract is ambiguous if it is reasonably susceptible to more than one interpretation." *Margrave v. Dermody Properties, Inc.*, 878 P.2d 291, 293 (Nev. 1994). Only if the contract is ambiguous may parol evidence be introduced. *Trans W. Leasing Corp. v. Corrao Constr. Co., Inc.*, 652 P.2d 1181, (Nev. 1982). Although Premier maintains that the parties had no intent to increase the scope of the security agreement by incorporating items listed in financing statements, and claims to have evidence to that effect, there is no ambiguity in the contract such that we would permit the introduction of parol evidence. The contract clearly states that items listed in a financing statement are the subject of Revanche's security interest. We must therefore determine whether the Financing Statement lists Premier's returned CD.

The Schedule 1 Financing Statement in Paragraph (h) identifies the following items: "instruments, documents, *notes*, drafts, and letters of credit (other than letters of credit in favor of

4

Creditor), *which arise from or relate to construction on the Land or to any business now or later to be conducted on it . . . .*" Financing Statement (emphasis added). Nevada law, as discussed above, includes CD's in its definition of "notes".

Because the CD is a note, and notes are listed in the Financing Statement, the CD is subject to Revanche's security interest if it "relate[s] to . . . any business now or later to be conducted" on the land. We conclude that this CD is related to the business of the Maxim. The CD would not have been purchased had it not been necessary for the running of the Maxim. More importantly, once the Maxim was no more, the CD was returned.

This is not to say, as Premier suggests, that Revanche's interpretation of the financing statement means that all assets mentioned on a financing statement are secured by the Deed of Trust. If Premier had, say, two properties, the Maxim and the Minim, a CD taken out for purposes of self-insurance on the Minim would not "relat[e] to" the Maxim. Such assets would not be secured by the Deed of Trust. Unfortunately for Premier, the CD in question *is* secured by the Deed of Trust.

## IV. CONCLUSION

Because the CD in question is listed in the Schedule 1 Financing Statement, which is in turn incorporated into the Security Agreement, the district court did not err in concluding that the Deed of Trust granted Revanche a security interest in the CD and the proceeds therefrom. Accordingly, the ruling of the district court is AFFIRMED. The motion of Revanche to dismiss and for costs is denied as MOOT.

5